120 P.3d 550 (2005)
155 Wash.2d 451
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Joseph P. WHITNEY, Attorney at Law.
No. 200,173-4.
Supreme Court of Washington, En Banc.
Argued May 5, 2005.
Decided September 29, 2005.
*552 David Gene `Arthur' Wecker, Port Orchard, for Petitioner.
Elizabeth Ann Turner, Lynnwood, Linda Briggs Eide, Wash. State Bar Ass'n, Seattle, for Respondent.
ALEXANDER, C.J.
¶ 1 Attorney Joseph P. Whitney has appealed a recommendation of the Washington State Bar Association (WSBA) Disciplinary Board (Board) that he be disbarred for two acts of professional misconduct. The recommendation was based on the Board's determination that Whitney violated various Rules of Professional Conduct (RPCs) by (1) testifying falsely under oath and (2) failing to cooperate fully and promptly with the WSBA disciplinary investigation of grievances against him. We adopt the Board's recommended sanction and order Whitney disbarred.

I
¶ 2 Joseph P. Whitney was admitted to the practice of law in Washington in 1994. The record shows that during and prior to 2001, Whitney accepted cases assigned to him by courts in Kitsap County, including appointments as a guardian ad litem (GAL).
¶ 3 In 2001, Whitney was appointed by the Kitsap County Superior Court to serve as a GAL for two children who were subjects of a contested family law matter between ex spouses, Victor Cienega and Sheri Brookman (Cienega-Brookman modification trial). Whitney received an advance fee in the amount of $1,000  $500 from each party  for services he was to render as a GAL. Due to the financial circumstances of the parties, Whitney agreed to serve as a GAL for the $1,000 advance and not seek any additional compensation for his services.
¶ 4 Whitney's investigation led him to submit a written report to the superior court in which he touched on the school activities of the parties' two children. In February 2002, Whitney testified at the Cienega-Brookman modification trial and indicated that he had interviewed three teachers at the school both children attended. He provided information in his testimony which he claimed he had obtained from the teachers. The three teachers, Linda Dorn, Jayme Lyons, and Jessica Tuttle-Gallagher, testified at the trial that they had never met with or spoken to Whitney. In response to the apparent disharmony in the trial testimony, the superior court judge stated, "I think [the] teachers forgot that Joe Whitney called them," and "I believe Mr. Whitney that he called them." Ex. 1, at 15.
¶ 5 In March 2002, Victor Cienega, the father of the children, filed a grievance with the WSBA alleging that Whitney had lied under oath in the proceeding in Kitsap County Superior Court. A month later, one of the teachers, Linda Dorn, filed a similar grievance with the WSBA against Whitney. Whitney did not respond to either grievance, later indicating that "he was `waiting for other grievances to be filed.'" Decision Papers (DP) at 10.
¶ 6 In September 2002, the WSBA warned Whitney that he would be compelled to attend a deposition and required to pay costs if he did not respond to the grievances. Despite this warning, Whitney failed to respond. He was, therefore, deposed on December 11, 2002. At his deposition, Whitney again testified that he had spoken to the three teachers.
¶ 7 In May 2003, a review committee of the Board concluded that there was sufficient evidence of unethical behavior on the part of Whitney to justify "a hearing ... on the allegations of the grievance[s]." Suppl. Clerk's Papers at 4. Pursuant to Enforcement of Lawyer Conduct (ELC) 5.3(f), the review committee assessed a $500 attorney fee against Whitney for the costs related to the deposition which Whitney had been compelled *553 to attend. The WSBA thereafter filed a formal complaint alleging that Whitney committed the following acts of professional misconduct:
COUNT 1
In testifying falsely under oath in Kitsap County Superior Court, Respondent violated RPC 3.3(a)1, RPC 3.3(a)4, RPC 8.4(c) and RPC 8.4(d). In testifying falsely under oath at his WSBA deposition, Respondent violated RPC 8.4(b), RPC 8.4(c), RPC 8.4(d) and RPC 8.4(l).
COUNT 2
By failing to cooperate fully and promptly with disciplinary investigations of the Cienega and/or Dorn grievances, Respondent violated [ELC] 5.3(e), ELC 5.3(f) and Rules for Lawyer Discipline (RLD) 2.8(a) and RPC 8.4(l) and is subject to discipline under ELC 5.3(f)3 and RLD 1.1(j) or RLD 2.8(b).
DP at 6. Whitney filed an answer to the complaint in which he asserted, as to count 1, that "[n]either Ms. Dorn nor Ms. Lyons contacted [him] to provide information." Clerk's Papers (CP) at 9. Whitney admitted his failure to cooperate, as alleged in count 2, but claimed that he "did not violate ELC 5.3(e) and[/]or ELC 5.3(f) and/or former RLD 2.8(a) and/or RPC 8.4(l), and is not subject to discipline." CP at 10.
¶ 8 The assigned hearing officer established January 12, 2004, as the date for the disciplinary hearing, and he ordered the parties to the proceeding to submit their list of potential witnesses to him by November 17, 2003. Pursuant to ELC 10.13(c), the WSBA filed a demand that Whitney produce certain documents at the disciplinary hearing.[1]
¶ 9 Six days before the scheduled hearing, Whitney's counsel moved for a continuance in order to obtain additional time within which to prepare for the January 12 hearing.[2] The hearing officer granted the motion and reset the hearing for March 22, 2004. He also entered a prehearing order, indicating that briefs were to be filed by March 1, 2004. Despite the continuance, Whitney failed to present a brief and a list of potential witnesses as required by the prehearing order.
¶ 10 Whitney represented himself at the disciplinary hearing. At the outset of the hearing, he requested an additional continuance in order to obtain a complete transcript of the Cienega-Brookman modification trial. The hearing officer denied Whitney's motion, concluding that it was untimely. Whitney then moved to dismiss the complaint against him, alleging that it was barred by principles of collateral estoppel. This motion was also denied. Whitney repeated his request for a continuance, this time claiming that the WSBA needed additional time to complete its investigation. The hearing officer denied this motion as well, concluding that Whitney did not have standing to seek a continuance on behalf of the WSBA.
¶ 11 At the hearing, Whitney again testified that he had spoken with the three teachers. He pointed to what he claimed were his notes of conversations with them. The teachers again testified that they had not spoken to Whitney and indicated, additionally, that they had information about the children that, in their opinion, would have been useful to the court.
¶ 12 Notwithstanding Whitney's failure to file a list of witnesses, the hearing officer allowed Whitney to present three witnesses. One of them, Sheri Brookman, the mother of the children, testified that Whitney "had told her that if he lost [his disciplinary] case there would be a `mistrial' in her custody case and that she could [lose] her children." DP at 13. Although Whitney made an effort during redirect examination to get Brookman to acknowledge that he did not make that statement, Brookman insisted that he had. Another witness, Kimberly Wright, the *554 mother of Brookman, testified that "she did not hear [Whitney] say it would be a `mistrial'" but, rather, that "the opposing party (Cienega) would argue he did not get a `fair trial' if this hearing went against [him]." Id.
¶ 13 At the conclusion of the hearing, the hearing officer entered findings of fact, conclusions of law, and recommendation. He found that Whitney's "testimony was not credible and [that] he [Whitney] had great motivation to lie since he is facing sanctions for his conduct." Id. at 12. He also found that the testimony of the teachers was "very credible and [that] they had no personal motivation to lie." Id.
¶ 14 The hearing officer found, in addition, that Whitney willfully refused to produce the records that the WSBA demanded that he produce at the hearing. Furthermore, the hearing officer found that Whitney refused to pay the $500 attorney fee assessed by the Review Committee.
¶ 15 Among other findings, the hearing officer determined that the notes that Whitney alleged to have made of his conversations with the teachers "lacked a date of conversation and appeared inconsistent with other notes taken contemporaneously with witness interviews." Id. at 11-12 (citing Ex. 3). He also found that there was no evidence that Whitney's mental state was impaired and that Whitney expressed no remorse or concern for the harm caused to the legal profession. Finally, he found that Whitney's misconduct involved multiple counts of dishonesty, that Whitney had several opportunities to cure the dishonest conduct but ignored those opportunities, that Whitney's conduct was likely to continue, and that Whitney "pose[d] a danger to the integrity of the judicial system and WSBA regulation of lawyers." Id. at 14-15.
¶ 16 The hearing officer concluded that the WSBA had proved both charged counts by a clear preponderance of the evidence and that Whitney had acted knowingly and intentionally in committing count 1. Disbarment, he concluded, was the presumptive sanction for both counts. He concluded, additionally, that the following aggravating factors were present: (1) dishonest or selfish motive, (2) pattern of misconduct, (3) multiple offenses, (4) bad faith obstruction of disciplinary proceedings, (5) submission of false evidence, (6) refusal to acknowledge wrongful nature of his conduct, (7) vulnerability of victim/clients, (8) substantial experience in practice, (9) indifference in making restitution, and (10) illegal conduct. The sole mitigating factor, according to the hearing officer, was absence of prior discipline. Finally, he determined that Whitney should be disbarred and required to pay the WSBA's costs and expenses.
¶ 17 Following the disciplinary hearing, Whitney submitted the Cienega-Brookman modification trial transcripts along with his designated clerk's papers for review by the Board. By letter, the assistant general counsel of the WSBA declined to submit the transcripts to the Board for its consideration, reasoning that they were not considered by the hearing officer and, thus, according to ELC 11.5(d), could not be considered by the Board.
¶ 18 By a 7 to 1 vote, the Board adopted the hearing officer's findings, conclusions, and recommendation. It did so despite its conclusion that three aggravating factors (pattern of misconduct, submission of false evidence, and indifference to making restitution) had no bearing on the sanction. The Board's lone dissenter concluded that Whitney should be suspended for three years rather than disbarred.
¶ 19 Whitney appealed the Board's recommendation to this court.

II
¶ 20 The following issues are before us for resolution:
1. Whether Whitney is subject to discipline for conduct which occurred while he was acting as a GAL.
2. Whether the WSBA is collaterally estopped from seeking discipline of Whitney because of the superior court's oral comments at the Cienega-Brookman modification trial.
3. Whether the hearing officer abused his discretion in denying any or all of Whitney's motions for continuance.

*555 4. Whether the Board should have considered the Cienega-Brookman modification trial transcripts.
5. Whether the findings of fact and conclusions of law of the hearing officer and Board are supported by a clear preponderance of the evidence.
6. Whether disbarment, as recommended by the hearing officer and Board, is an appropriate sanction.

III
¶ 21 This court has "plenary authority over, and hold[s] the ultimate responsibility for, determining the nature of lawyer discipline." In re Disciplinary Proceeding Against McKean, 148 Wash.2d 849, 861, 64 P.3d 1226 (2003) (citing In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 565, 9 P.3d 822 (2000)). We have, however, delegated certain specific responsibilities to the WSBA. In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 593, 48 P.3d 311 (2002). A hearing officer makes findings of fact, conclusions of law, and recommendation to the Board. Id. (citing RLD 4.13(b)). The Board is then "free to adopt, modify, or reverse" the hearing officer's "findings, conclusions, or recommendations." Id. at 594, 48 P.3d 311 (citing RLD 6.7(e)). "Unchallenged findings of fact made by the hearing officer and affirmed by the Disciplinary Board will be accepted as verities on appeal." Id. (citing In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 759, 801 P.2d 962 (1990)). We will affirm all challenged findings of fact that are supported by a clear preponderance of the evidence. Curran, 115 Wash.2d at 759, 801 P.2d 962. Finally, we review conclusions of law de novo and require that they be supported by the findings of fact. Id. (citing In re Disciplinary Proceeding Against Felice, 112 Wash.2d 520, 525, 772 P.2d 505 (1989)).

A. JURISDICTION
¶ 22 Whitney asserts that the WSBA  and, by implication, this court  is without jurisdiction to discipline him for misconduct which is alleged to have occurred while he was acting as a GAL and not as an attorney. He, thus, asks this court to dismiss the complaint against him.[3]
¶ 23 We begin our analysis of this issue by taking note of the oath of attorney that all attorneys admitted to the practice of law in Washington must recite and sign. It contains a promise by the attorney to "abide by the Rules of Professional Conduct approved by the Supreme Court of the State of Washington." Admission to Practice Rule 5(d). The preamble to the RPCs indicates that "[i]n fulfilling professional responsibilities, a lawyer necessarily assumes various roles that require the performance of many difficult tasks .... but fundamental ethical principles are always present as guidelines." (Emphasis added.) The RPCs are "mandatory in character," and they create "the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." RPC Preliminary Statement.
¶ 24 It is well settled that this court is charged with the duty of imposing discipline upon attorneys who are licensed to practice law in Washington and who violate the RPCs. As we have observed long ago, "membership in the state bar association and authorization to continue in the practice of law coexist under the aegis of one authority, the Supreme Court." State ex rel. Schwab v. Wash. State Bar Ass'n, 80 Wash.2d 266, 269, 493 P.2d 1237 (1972). And we have made it clear that "Washington attorneys can be sanctioned for misconduct occurring outside the [traditional] practice of law." In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 577, 974 P.2d 325 (1999). Indeed, we have said that "[a]ttorneys in Washington are subject to the Rules of Professional Conduct at all times, regardless of whether they are acting as an attorney at the *556 time of the alleged misconduct." Id.; see also In re Disciplinary Proceeding Against Plumb, 126 Wash.2d 334, 892 P.2d 739 (1995) (attorney disciplined for theft); Curran, 115 Wash.2d 747, 801 P.2d 962 (attorney disciplined for vehicular homicide).
¶ 25 Whitney's contention, that the grievance procedure outlined in Local Rule 80(b) of the Kitsap County Superior Court provides the sole remedy for resolving grievances against a GAL, fails in light of the aforementioned principles. The fact that Whitney's misconduct happened while he was acting as a GAL and that he could have been suspended or removed from Kitsap County's GAL registry for violating a local rule is as irrelevant in an attorney disciplinary proceeding as is the fact that an attorney may suffer a criminal penalty for an act that subjects him or her to attorney discipline. The plain fact is that how one conducts himself or herself as a GAL reflects on their ability to practice law, and "we have not hesitated to impose appropriate sanctions upon attorneys engaging in misconduct outside the practice of law, provided that such conduct reflected adversely upon that attorney's ability to practice law." Huddleston, 137 Wash.2d at 578, 974 P.2d 325. In sum, although Whitney was acting as a GAL when he testified in Kitsap County Superior Court and at a deposition, he was not relieved of the ethical obligations of his chosen profession. Attorneys, like Whitney, who fail to uphold their ethical duties when acting as a GAL are, consequently, subject to discipline. We conclude, therefore, that the WSBA had jurisdiction to seek discipline of Whitney for violating the RPCs and that this court has jurisdiction to impose it.

B. COLLATERAL ESTOPPEL
¶ 26 Whitney also claims that principles of collateral estoppel preclude the WSBA from taking action to discipline him. He posits that the superior court judge's comment at the Cienega-Brookman modification trial that "I believe Mr. Whitney that he called [the teachers]" constitutes a factual determination that may not be impeached in a discipline proceeding. Br. of Appellant at 28; Ex. 1, at 15.
¶ 27 The doctrine of collateral estoppel applies only when there are (1) identical issues, (2) a final judgment on the merits, (3) identical parties or a party in privity with a party to the prior litigation, and (4) application of the doctrine would not work an injustice to the nonmoving party. Malland v. Dep't of Ret. Sys., 103 Wash.2d 484, 489, 694 P.2d 16 (1985) (citing Rains v. State, 100 Wash.2d 660, 674 P.2d 165 (1983)).
¶ 28 Contrary to Whitney's claim, the doctrine of collateral estoppel has no application here. In reaching that conclusion, we start with the observation that the issues presented to the hearing officer, the Board, and this court are not identical to those in the Cienega-Brookman modification trial. The central issue before the superior court judge at the trial was what was in the best interests of the two children involved. Whether or not Whitney violated certain provisions of the RPCs was not an issue before the court. Indeed, the trial judge's comment at the dissolution modification trial that "I think Mr. Whitney is absolutely correct that if it was determined on a basis that he did not  that he testified falsely in court, that will not only affect his ability to become a[GAL] but it would affect his ability to practice law," appears to acknowledge that the issue of professional misconduct was not before that court. Ex. 1, at 15-16 (emphasis added).
¶ 29 In addition, the record is devoid of any documentation that a final judgment was reached at superior court on the matter of misconduct. It is also clear that the WSBA was not a party or privy to the Cienega-Brookman modification trial.
¶ 30 Finally, the application of the principles of collateral estoppel would likely work an injustice to the WSBA and its ability to regulate attorney conduct. Because none of the elements of collateral estoppel are present, we conclude that the WSBA was not foreclosed from seeking discipline against Whitney.

C. MOTIONS FOR CONTINUANCE

Proper Investigation
¶ 31 Whitney avers that the complaint filed against him should be dismissed *557 because the hearing officer erred in denying his motion to continue the hearing date "[b]ecause the Bar hasn't completed their investigation." Hearing Before Hearing Examiner at 26. Under ELC 10.12(f), "[e]ither party may move for a continuance of the hearing date. The hearing officer has discretion to grant the motion for good cause shown." Generally, a reviewing court will not disturb a discretionary act absent a showing of manifest abuse of discretion. See In re Disciplinary Proceedings Against Bonet, 144 Wash.2d 502, 510, 29 P.3d 1242 (2001) (citing Del Guzzi Constr. Co. v. Global N.W. Ltd., 105 Wash.2d 878, 719 P.2d 120 (1986)). "An abuse of discretion occurs only when no reasonable person would take the view adopted." Id. (citing State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997)).
¶ 32 Whitney cites no authority for the proposition that a respondent attorney has standing to move for a continuance on behalf of the WSBA. If the WSBA had felt the need for additional time in which to prepare its case, it could have so indicated. It made no such request and indicated, rather, that it did not need additional time to prepare its case. It also noted that the review committee had declined to order further investigation and ordered that a hearing be held to address the allegations within the Cienega and Dorn grievances. As there were no reasonable grounds upon which Whitney's motion should have been granted, we conclude that the hearing officer did not abuse his discretion in denying the continuance motion.

Cienega-Brookman Modification Transcripts
¶ 33 Whitney also asserts that the hearing officer erred in denying him a continuance so that he could obtain the Cienega-Brookman modification trial transcripts. He claims that it was necessary for him to have this transcript in order to prepare a brief for the hearing. The record shows, however, that Whitney had ample opportunity  well over two years  to obtain a copy of the aforementioned transcripts. Whitney simply failed to seek a copy of the transcripts and failed to prepare a hearing brief. The hearing officer did not abuse his discretion when he concluded that the motion was untimely.

D. EXCLUSION OF TRANSCRIPTS FROM BOARD REVIEW
¶ 34 Whitney contends, additionally, that the WSBA's assistant general counsel wrongly denied his request to present the Cienega-Brookman modification trial transcript to the Board for its review.
¶ 35 ELC 11.5(d) provides that "[e]vidence not presented to the hearing officer or panel must not be presented to the Board." This principle is reiterated in ELC 11.12(b), which states: "Evidence not presented to the hearing officer or panel cannot be considered by the Board." Here, Whitney was attempting to present material to the Board that was not presented to the hearing officer. Br. of Appellant at App. E-F. This he cannot do. We conclude, therefore, that the assistant general counsel did not err in excluding the transcripts from board review.

E. CHALLENGES

Challenges to the Findings of Fact
¶ 36 Whitney challenges 26 of the 41 findings of fact, but does so by merely reciting them and indicating that the "hearing officer erred in entering" particular findings of fact. Br. of Appellant at 2-10. RAP 10.3 requires an appellant to present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record. Whitney provides no argument or citation to the record to support his many challenges to the findings. Because Whitney's challenges are insufficiently briefed, we decline to address them and conclude that the findings of fact are verities. See In re Disciplinary Proceeding Against Haskell, 136 Wash.2d 300, 310-11, 962 P.2d 813 (1998) (declining to address insufficiently briefed challenges); In re Disciplinary Proceeding Against DeRuiz, 152 Wash.2d 558, 572, 99 P.3d 881 (2004) (same); see also In re Estate of Lint, 135 Wash.2d 518, 532, 957 P.2d 755 (1998) (declining to scour the record and construct arguments for counsel).

*558 Challenges to the Conclusions of Law

¶ 37 Count 1. The hearing officer and the Board both concluded that Whitney knowingly and intentionally violated RPC 3.3(a)(1) (false statement of material fact to a tribunal), RPC 3.3(a)(4) (offering false evidence), RPC 8.4(c) (dishonest conduct), and RPC 8.4(d) (conduct prejudicial to the administration of justice) by testifying falsely and committing perjury under oath in the Cienega-Brookman modification trial. They also concluded that Whitney knowingly and intentionally violated RPC 8.4(b) (criminal conduct), RPC 8.4(c), RPC 8.4(d), and RPC 8.4(l) (violation of a duty imposed by the ELCs) by testifying falsely under oath at his WSBA deposition. Whitney completely fails to persuade us that the findings of the hearing officer and Board do not support their conclusions. We, therefore, affirm the conclusions that Whitney violated RPC 3.3(a)(1), RPC 3.3(a)(4), RPC 8.4(b), RPC 8.4(c), RPC 8.4(d), and RPC 8.4(l).
¶ 38 Count 2. The hearing officer and Board concluded, additionally, that Whitney violated ELC 5.3(e) (duty to furnish prompt response), ELC 5.3(f) (failure to cooperate subjects attorney to discipline), former RLD 2.8(a), and RPC 8.4(l) by failing to cooperate fully and promptly with the disciplinary investigation of the grievances filed against him and that Whitney was subject to discipline under ELC 5.3(f) and RLD 1.1(j) or RLD 2.8(b). Not only do the findings of the hearing officer and Board support those conclusions, it is apparent from the record that Whitney admitted to the factual allegations contained in count 2. Consequently, we affirm the conclusions that Whitney violated ELC 5.3(e), ELC 5.3(f), former RLD 2.8(a), and RPC 8.4(l).

F. SANCTIONS
¶ 39 In determining the sanction to be imposed for attorney misconduct, we utilize the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (ABA Standards) as a basic, but not conclusive, guide. Under these standards, we first determine the presumptive sanction and then determine whether the presumptive sanction should be heightened or reduced due to applicable aggravating or mitigating factors. In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 492-93, 998 P.2d 833 (2000).

Presumptive Sanction
¶ 40 The Board concluded that disbarment was the presumptive sanction for both counts, pursuant to ABA Standards stds. 5.11, 6.11, and 7.1. Although Whitney has assigned error to this conclusion, he does not set forth any argument to support the contention. We adopt the Board's decision in this regard.

Aggravating and Mitigating Factors
¶ 41 As noted above, the Board found that the following aggravating factors supported disbarment: (1) dishonest or selfish motive, (2) multiple offenses, (3) bad faith obstruction of disciplinary proceedings, (4) refusal to acknowledge wrongful nature of his conduct, (5) vulnerability of victim/clients, (6) substantial experience in practice, and (7) illegal conduct. Whitney's absence of prior discipline, which the Board deemed the sole mitigating factor, does not mitigate disbarment. Again, Whitney has not assailed these findings in an appropriate manner.

Proportionality and Unanimity
¶ 42 While we do not generally depart from a Board's recommendation, we will do so if we are persuaded that the sanction is inappropriate in light of the (1) proportionality of the sanction to the misconduct or (2) the extent of agreement among the members of the Board. In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 259, 66 P.3d 1057 (2003). We review the proportionality of sanctions only if the issue is raised by the attorney who is being disciplined. In re Disciplinary Proceeding Against Schwimmer, 153 Wash.2d 752, 758 ¶ 19, 108 P.3d 761 (2005) (citing In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 95-96, 667 P.2d 608 (1983)). Whitney fails to raise this issue.
¶ 43 With respect to unanimity, we give great deference to the decisions of a unanimous Board, and we give less deference to *559 the decision of a divided Board. Id. at 764 ¶ 32, 108 P.3d 761 (citing Noble, 100 Wash.2d at 96, 667 P.2d 608). Here, the Board voted 7 to 1 in favor of disbarment. Although not a unanimous recommendation, we note the high degree of agreement and the fact that the dissenting board member recommended a three-year suspension.

IV
¶ 44 In conclusion, we are satisfied that Whitney committed the acts of misconduct alleged in counts 1 and 2. The misconduct by Whitney was serious, and in light of the presumption that such misconduct should generally result in disbarment and the other factors bearing on the imposition of sanctions, we adopt the Disciplinary Board's recommendation and order that attorney Joseph P. Whitney be disbarred from the practice of law.
WE CONCUR: C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST and J.M. JOHNSON, JJ.
NOTES
[1] The WSBA demanded that Whitney produce his complete file relating to his service as a GAL for the Cienega-Brookman children, including, but not limited to: (1) all financial documentation, (2) fax logs, and (3) itemized telephone, cellular phone, and office phone bills.
[2] Attorney Jeanette Dalton entered a notice of appearance on behalf of Whitney that was contingent on the hearing officer granting the motion for continuance. She later filed a notice of intent to withdraw, effective March 5, 2004.
[3] Although Whitney contends that both counts of the complaint should be dismissed, this argument only has application to count 1. We say that because the misconduct alleged in count 2, failing to cooperate fully and promptly with the WSBA, applies to all attorneys under disciplinary investigation regardless of the eventual outcome of the disciplinary proceeding. See ELC 5.3(e)-(f).